UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF SAN BERNARDINO,<br>        Plaintiff,<br><br>        vs.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE INTERIOR,<br>        Defendant,<br><br>and<br><br>NATIONAL PARKS CONSERVATION ASSOCIATION, CENTER FOR BIOLOGICAL DIVERSITY, AND SIERRA CLUB,<br>        Defendant-Intervenors | Case No.  EDCV06-1179 VAP (RCx)<br><br>(~~PROPOSED~~) STIPULATED JUDGMENT |

This matter comes on the Joint Motion for Entry of Stipulated Judgment filed herein by the United States and the United States Department of the Interior ("United States"); the County of San Bernardino ("County"); and the National Parks Conservation Association, Center for Biological Diversity, and Sierra Club ("Conservation Groups").  The United States, the County and the Conservation Groups are collectively referred to as the "Parties".

**I.      Background**

A.      On October 26, 2006, the County of San Bernardino filed a Complaint against the United States of America and the United States Department of the Interior (Dkt. 1), seeking to quiet title in fourteen roads which the County asserts constitute rights-of-way pursuant to the Act of July 26, 1866, ch. 262, § 8, 14 Stat.

251, 253, codified at 43 U.S.C. § 932 ("R.S. 2477"), repealed by the Federal Land Policy and Management Act of 1976, 43 U.S.C. §§ 1701 et seq.

B.     On January 16, 2007, the United States filed its Answer (Dkt. 8) denying that the County was entitled to the requested relief.

C.     On September 6, 2007, the Conservation Groups filed a Motion to Intervene and supporting Memorandum (Dkt. 14-15), which Motion was granted and filed by the Court on October 23, 2007 (Dkt. 29).  The Conservation Groups filed their Answer on October 23, 2007 (Dkt.  30) denying that the County was entitled to the requested relief.

D.     Ten of the rights-of-way claimed by the County are located on federally-owned land within the Mojave National Preserve ("Preserve"), which is under the administrative jurisdiction of the National Park Service ("NPS").

E.     The other four rights-of-way claimed by the County are located on federally-owned land within the California Desert Conservation Area ("CDCA"), which is under the administrative jurisdiction of the Bureau of Land Management ("BLM").

F.     On May 31, 2012, the Parties entered into a Settlement Agreement whereby after the completion of certain conditions precedent, the Parties agreed to request that the Court enter this Stipulated Judgment.

G.     On _____, the Parties filed a Joint Motion for Entry of [Proposed] Stipulated Judgment (Dkt. __) ("Joint Motion") requesting that the Court enter this Stipulated Judgment.  The Joint Motion indicates that the conditions precedent included in the Parties' Settlement Agreement have been completed and fulfilled to each of the Parties' satisfaction.

H.      The Court has reviewed the Parties' Joint Motion and the proposed Stipulated Judgment and proposed Order tendered by the Parties with the motion.  The Parties recognize, and the Court being fully advised, hereby finds, that this Stipulated Judgment has been negotiated by the Parties in good faith, that implementation of this Stipulated Judgment will avoid prolonged and complicated litigation between the Parties, and that this Stipulated Judgment is fair, reasonable, consistent with applicable law, and in the public interest.

**NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED:**

**II.     Jurisdiction and Venue**

The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1346(f).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

**III.    Definitions**

The following definitions apply for purposes of this Judgment and Order:

A.      "Improvement" shall mean a material alteration or change to the existing right-of-way easement from its present condition and is distinguished from "maintenance" as defined below.  Improvements include, but are not limited to, widening of the road, the horizontal or vertical realignment of the road, the installation of structures or facilities within the right-of-way easement (as distinguished from cleaning, repair, or replacement in kind of already existing structures or facilities), as well as any material change in the surface composition of the road (e.g., going from dirt to gravel or pavement, from gravel to pavement, etc.), material change in the location of daylight channels or culverts, or any other change in the nature of the right-of-way easement that may materially impact federal lands, resources, or other values.

B.     "Maintenance" shall mean work that is reasonably necessary to preserve the existing right-of-way easement in its present condition (i.e., to maintain the status quo).  Maintenance includes, but is not limited to, the physical upkeep or repair of wear or damage to the right-of-way easement whether from natural or other causes, maintaining the shape of the road, minor widening only to the extent necessary to maintain edge lines of the existing road, grading a previously graded road or shoulder, repaving a previously paved surface, site specific hardening of shoulders as necessary to protect the road shoulder from erosion, maintaining the shape of the road or shoulder to permit drainage, and keeping drainage features open and operable in their present location.

C.     "Structures and Facilities" shall include, but are not limited to, lighting, signs other than standard-size regulatory signs, bridges, cattle guards, culverts, drainage features, daylight channels, turn outs, vista points, raised medians strips, sidewalks, guardrails, fencing, retaining walls, curbs, and k-rails.

D.     "Applicable Laws" includes the Endangered Species Act, 16 U.S.C. §§ 1531, et seq.; the Archaeological Resources Protection Act, 16 U.S.C. §§ 470aa, et seq.; the Clean Water Act, 16 U.S.C. §§ 1251, et seq.; all laws relating to equal protection and non-discrimination; and all other existing and future federal, state and local laws (whether under common law, statute, rule, regulation, ordinance or otherwise), all requirements under permits issued with respect thereto, and all existing and future orders, decrees, judgments, directives or other requirements of any governmental authority relating to the use or maintenance of the right-of-way easement areas described herein.  The term "Applicable Laws" also includes any programmatic or generally applicable local, state or federal governmental regulatory permits, approvals or decision records applicable to the use or maintenance of the right-of-way easement areas described herein, including any

Biological Opinions and Incidental Take Permits issued pursuant to the Endangered Species Act.

E.     "Environmental Requirements" include all present and future federal, state and local laws (whether under common law, statute, rule, regulation or otherwise), all requirements under permits issued with respect thereto, and all present and future orders, decrees, judgments, directives or other requirements of any governmental authority relating to health, safety and the environment, to any Hazardous Materials, as defined below, or to any activity involving Hazardous Materials.

F.     "Hazardous Materials" include any pollutant, contaminant, chemical or hazardous, toxic or dangerous waste, substance, chemical or material, or any other substance or material regulated or controlled pursuant to any Environmental Requirement.

## IV.     Legal Background: Revised Statute 2477

During an era of federal land grant statutes aimed at facilitating the settlement of the American West, R.S. 2477 was enacted as a means of granting rights-of-way for the construction of highways across unreserved public domain lands.  *See generally*, Cong. Research Service, Report for Congress, *Highway Rights of Way: The Controversy Over Claims Under R.S. 2477*, at 10-18 (1993); *see also Central Pac. Ry. Co. v. Alameda County*, 284 U.S. 463, 472-73 (1932).  From its enactment in 1866 until its repeal in 1976, the statute provided, in its entirety: "That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."  Act of July 26, 1866, Ch. 262, § 8, 14 Stat. 251, 253, codified in 1873 as section 2477 of the Revised Statutes, recodified in 1938 as 43 U.S.C. § 932 (1970, repealed 1976).

1   On October 21, 1976, Congress enacted the Federal Land Policy and Management

2   Act, which repealed R.S. 2477 but preserved "any valid" right-of-way "existing on

3   the date of approval of this Act."  Pub. L. No. 94-579, §§ 701(a), 706(a), 90 Stat.

    2743, 2793 (1976).  Accordingly, rights-of-way under R.S. 2477 that were

4   perfected before the statute's repeal in 1976 and which have not been

5   abandoned or otherwise relinquished remain valid today.

6   Where the conditions to the waiver of the United States sovereign immunity

7   under the Quiet Title Act, 28 USCS § 2409a, are met, appropriate government

    entities may file suit to quiet title against the United States.  The Quiet Title Act

8   requires that the "complaint shall set forth with particularity the nature of the

9   right, title, or interest which the plaintiff claims in the real property," 28 USCS §

    2409a(d).  In addition, to establish an R.S. 2477 right-of-way the appropriate

10  government entity bringing suit must demonstrate, inter alia, that the grant of a

11  right-of-way was accepted by construction and use prior to the statute's repeal in

12  1976 and, where applicable, prior to the reservation or appropriation of the

    public land underlying the alleged right-of-way to some other use.  *See, e.g.,*

13  *Adams v. U.S.*, 3 F.3d 1254, 1257 (9th Cir. 1993) (To establish an R.S. 2477

14  easement, a plaintiff "must show that the road in question was *built*" when the

15  surrounding public land was unreserved for other purposes (emphasis added));

    *Fitzgerald v. U.S.,* 932 F. Supp. 1195, 1204 (D. Ariz. 1996) ("To perfect an R.S. 2477

16  claim, one requirement is that the offer made by the law must be accepted by

17  construction and use and the acceptance must be made while the lands were

18  unreserved from the public domain . . .").

19  **V.      Stipulated Findings of Fact and Conclusions of Law**

_____

The Parties hereby stipulate that the following Findings of Fact taken together support the Conclusions of law provided.

**A.      Nipton Road**

        1.      **Location**

                a.      Nipton Road is an east/west route linking Interstate 15, the town of Nipton, and ultimately US 95 in Nevada.  The segment of Nipton Road over which the County has claimed a right of way in this litigation is located on Federal public lands within the eastern part of the County of San Bernardino.  The claimed segment is a paved two-lane road just over 13 miles long commencing at the road's intersection with Interstate 15 and proceeding east to the Nevada State Line.

                b.      Nipton Road forms a portion of the boundary of Mojave National Preserve.  The boundary is defined as 100 feet from the centerline of Nipton Road.  The lands lying to the south of that line were withdrawn and reserved as National Park Service land on October 31, 1994, pursuant to the California Desert Protection Act, 16 U.S.C. § 410aaa *et seq.* (P.L. 103-433, Title V, 108 Stat. 4489.

                c.      A more specific description of the location and physical dimensions of (including beginning and ending points, alignment, and width) the claimed right-of-way easement in Nipton Road being quieted in the County pursuant to this stipulated judgment is set forth in, and is limited to, the "Legal Description" of the right-of-way easement for the segment of Nipton Road attached to this Stipulated Judgment.

### 2. Land Status

a. The Federal lands adjacent to and underlying Nipton Road were "public lands, not reserved for public uses" within the meaning of RS 2477 during certain periods prior to the repeal of R.S. 2477 on October 21, 1976.

b. On November 26, 1934, pursuant to the Taylor Grazing Act of June 28, 1934, President Roosevelt issued Executive Order 6910 which temporarily withdrew from settlement, location, sale or entry, and reserved for classification, all of the vacant, unreserved and unappropriated public land in the State of California (which included the Federal lands underlying Nipton road). Exec. Order No. 6910 (1934). In 1936, Congress amended the Taylor Grazing Act and authorized the Secretary of the Interior to examine and classify any lands withdrawn and reserved by Executive Order 6910 and to open the lands to entry, selection, or location for disposal in accordance with the classification under applicable public land laws. 43 U.S.C. § 315f. On July 31, 1968, the Secretary of the Interior, acting through the BLM, classified the lands underlying the claimed section of Nipton Road for multiple use under the authority of the Classification and Multiple Use Act of 1964. 88 P.L. 607, 78 Stat. 986; 33 Fed. Reg. 10885 (July 31, 1968). This classification segregated the lands only from appropriation under the agricultural lands laws, from sales under R.S. 2455, and in some cases, from operation under the mining laws. The effect of this classification was to re-open the subject lands for potential disposition under applicable public land laws, including for construction of highways pursuant to R.S. 2477. *See Humboldt County v. United States,* 684 F. 2d 1276, 1281 (9th Cir. 1982) (discussing effect of Executive Order 6910).

1

2

c.      Before 1934, and from the time they were classified by BLM in 1968 to the repeal of R.S. 2477 on October 21, 1976, the lands then in federal ownership underlying the claimed right of way over a segment of Nipton Road were "public lands, not reserved for public uses" within the meaning of R.S. 2477.

3

4

5

6

d.      On October 21, 1976, the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 et seq., was enacted which repealed R.S. 2477.  FLPMA § 706(a), Pub. L. No. 94-579, 90 Stat. 2743, 2793. FLPMA had the effect of "freezing" the scope of an R.S. 2477 right-of-way on the date of enactment.  43 U.S.C. §§ 1701 et seq.  Also on October 21, 1976, the lands underlying the claimed right of way over a segment of Nipton Road were designated as part of the California Desert Conservation Area by the same Act of Congress.  43 U.S.C. § 1781, FLPMA § 601.

7

8

9

10

11

12

### 3.    Historic Maps

13

14

a.      An 1875 Corps of Engineers, Topographic Sketch of Diversion of the Colorado River for the purpose of Irrigation depicts a route that generally follows that of the claimed highway.

15

16

b.      A 1914 Automobile Club of Southern California, Map of a Portion of Southern California and Southwest Nevada, Embracing the Arid Region of Mojave and Colorado Deserts depicts a route that generally follows that of the claimed highway.

17

18

19

c.      A 1916 map of Range Waters of Rock Springs Land and Cattle Company depicts a route generally consistent with the claimed highway 5 miles west of Ivanpah Road.

d.      A 1920 Highway Map of the County of San Bernardino depicts a route that generally follows that of the claimed highway.

e.      A 1921 Relief Map of part of the Mohave Desert Region, California, showing Desert Watering Places, Sheet IV, depicts a route that closely follows the claimed highway

f.      The 1912, 1922 reprint USGS Ivanpah Quadrangle depicts a route that closely follows the claimed highway

g.      The 1956 USGS Ivanpah Quadrangle depicts a medium duty road which appears to approximate the claimed highway

### 4.    County Maintenance Records

Some San Bernardino County Road Maintenance Records describe a route consistent with the claimed highway.  County Road Maintenance records, include various entries for Nipton Road including in 1931, 1941, 1961, and 1971. The road type for Nipton Road was identified as dirt in 1931; as earth in 1941; and as Type 3 road in 1961.  The 1971 entry describes the road as a type 3 and type 4 road 13.14 miles long and 26 feet wide.  Road type 3 is defined by the County in the April 1973 Maintained Road System submittal as oil treated gravel and armor top, including those with seal coats.  Road type 4 is defined as roads with all types of plant mixed surfacing and/or asphaltic concrete both with or without seal coat. Taken together, these entries show that the claimed highway was maintained,

1  constructed, and improved over a period of years when the public lands were

2  unreserved and that by 1976 when RS 2477 was repealed the claimed right of way

3  segment was a paved road.

**5.    Planning Documents**

4

5       a.      In November 1973, BLM released its "Interim Critical

   Management Program for Recreation Vehicle Use on the California Desert."

6  Vehicle use on lands encompassing lands underlying Nipton Road was limited to

7  designated roads and trails.  The map accompanying the plan identifies the

   claimed highway as an open route, thereby not limiting vehicle use on Nipton

8  Road.

9

       b.      In May of 1988, the BLM released the East Mojave

10 National Scenic Area Plan.  Nipton Road is identified as a county-maintained road

11 in that Plan.  The Plan explains that "[m]ost of the Scenic Area's roads and trails

   have been in existence for several decades and are the legacies of past mining,

12 agriculture, ranching, and homesteading activities."

13

**6.    Public Use**

14

15      a.      The facts taken together show that the claimed right of

   way over a segment of Nipton Road was historically constructed and used  for

16 travel through the area.  The claimed segment of Nipton Road connects the

17 identifiable destinations of Interstate 15, the town of Nipton, and, extending

   beyond the claimed section, U.S. 95 in Nevada.

18

       b.      The Parties agree that the width of the claimed right-of-

19 way as described in the Legal Description of the segment of  Nipton Road herein,

which is based on a survey of the segment of Nipton Road as provided in the Parties' Settlement Agreement, is a sufficient, reasonable, and necessary width to accommodate the types of uses to which the right-of-way had traditionally been put as of October 21, 1976.

### 7. Conclusion

The Parties agree that the stipulated facts above taken together show that the claimed right of way over a segment of Nipton Road qualifies as a public highway right-of-way under R.S. 2477. The lands underlying the claimed segment of Nipton Road were open to operation of R.S. 2477 before 1934, and from the date the lands were classified in 1968 until the repeal of R.S. 2477 in October 1976. The claimed highway appears to be reflected on various historic maps, and is listed in various County maintenance records. The road was mechanically constructed and maintained, and it existed as a paved road prior to the repeal of R.S. 2477. The road was used by the public as a highway though the desert which connects identifiable destinations in California and Nevada.

### B. Goffs Road

#### 1. Location

a. Goffs Road is an east/west route from its junction with State Highway 95 west to its junction with Lanfair Road at the town of Goffs. From its junction with Lanfair Road, Goffs Road proceeds in a south-west direction to its intersection with Interstate 40 and on to its junction with the National Trails Highway (Old Route 66). The portion of Goffs Road claimed by the County in this litigation is the segment of Goffs Road commencing at its junction

with Lanfair Road and proceeding south-west to its intersection with Interstate 40.  The claimed segment is located on Federal lands within the eastern part of the County of San Bernardino.  The claimed segment is currently a paved two-lane road approximately 10 miles long, which generally parallels the Burlington Northern Santa Fe Railroad tracks.

b.     The claimed segment of Goffs Road forms a part of the boundary of Mojave National Preserve.  The boundary of the Preserve is defined as 100 feet from centerline of Goffs Road.  The lands lying to the north of that line were withdrawn and reserved as National Park Service land on October 31, 1994, pursuant to the California Desert Protection Act, 16 U.S.C. § 410aaa *et seq.* (P.L. 103-433, Title V, 108 Stat. 4489).

c.     A more specific description of the location and physical dimensions of (including beginning and ending points, alignment, and width), and exclusions from, the claimed right-of-way easement in Goffs Road being quieted in the County pursuant to this stipulated judgment is set forth in, and is limited to, the "Legal Description" of the right-of-way easement for the segment of Goffs Road attached to this Stipulated Judgment.

**2.     Land Status**

a.     The federal lands along and underlying Goffs Road were "public lands, not reserved for public uses" within the meaning of RS 2477 during certain periods prior to the repeal of R.S. 2477 on October 21, 1976.

b.     The following lands adjacent to and underlying portions of Goffs Road were conveyed out of Federal ownership in 1909 and were

reconveyed to the United States after the repeal of R.S. 2477: T9N, R17E, SBM, secs. 25; T9N, R18E, SBM, secs. 9; T9N, R18E, SBM, secs. 17. The segments of Goffs Road located on the above lands are referred to herein as the "Excluded Segments" of Goffs Road.

           c.      On November 26, 1934, pursuant to the Taylor Grazing Act of June 28, 1934, President Roosevelt issued Executive Order 6910 which temporarily withdrew from settlement, location, sale or entry, and reserved for classification, all of the vacant, unreserved and unappropriated public land in the State of California (which included the Federal lands underlying Goffs Road). Exec. Order No. 6910 (1934). In 1936, Congress amended the Taylor Grazing Act and authorized the Secretary of the Interior to examine and classify any lands withdrawn and reserved by Executive Order 6910 and to open the lands to entry, selection, or location for disposal in accordance with the classification under applicable public land laws. 43 U.S.C. § 315f. On June 8, 1967, the Secretary of the Interior, acting through the BLM, classified the lands underlying the claimed section of Goffs Road for multiple use under the authority of the Classification and Multiple Use Act of 1964. 88 P.L. 607, 78 Stat. 986; 32 Fed. Reg. 8251 (June 8, 1967). This classification segregated the lands only from appropriation under the agricultural lands laws, from sales under R.S. 2455, and in some cases, from operation under the mining laws. The effect of this classification was to re-open the subject lands for potential disposition under applicable public land laws, including for construction of highways pursuant to R.S. 2477. *See Humboldt County,* 684 F.2d at 1281.

---

d.  Before 1934, and from the time they were classified by BLM in 1967 to the repeal of R.S. 2477 on October 21, 1976, the lands then in federal ownership underlying the claimed section of Goffs Road were "public lands, not reserved for public uses" with the meaning of R.S. 2477.

e.  On October 21, 1976, FLPMA was enacted which repealed R.S. 2477.  43 U.S.C. §§ 1701 *et seq*.;  FLPMA § 706(a), Pub. L. No. 94-579, 90 Stat. 2743, 2793 . FLPMA had the effect of "freezing" the scope of an R.S. 2477 right-of-way on the date of enactment.  43 U.S.C. §§ 1701 *et seq*. Also on October 21, 1976, the lands underlying the claimed right of way over a segment of Goffs Road were designated as part of the California Desert Conservation Area by the same Act of Congress.  43 U.S.C. § 1781, FLPMA § 601.

**3.  Historic Maps**

a.  A 1914 Automobile Club of Southern California Map of a Portion of Southern California and Southwest Nevada, Embracing the Arid Region of Mojave and Colorado Deserts, depicts a route that appears to follow that of the claimed highway.

c.  A 1920 Highway Map of the County of San Bernardino depicts a route that appears to follow the claimed highway.

d.  A 1921 Relief Map of part of the Mohave Desert Region, California showing Desert Watering Places, Sheet IV, depicts a route that closely follows the claimed highway.

e.  The 1956 United States Geological Survey Fenner Quadrangle depicts a light duty road which closely follows the claimed highway.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

    f.  The 2005 BLM publication "Life in the Past Lane. The Route 66 Experience" presents historical and management context for the Route 66 corridor in California.  The publication includes numerous historic maps.  Routes closely aligned with the claimed section of Goffs Road appear in the following figures from that document: Figure 1. Map showing Route 66 through Southern California; Figure 4. Map showing the National Old Trails Road and other roads ca. 1918; Figure 5. Thompson's map of the southern California desert, showing the National Old Trails Road, ca. 1918; Figure 6. "Principal Automobile Route of San Bernardino County, California," 1918; Figure 9. "Map of San Bernardino County, California, showing roads, railroads, springs, and mining districts of the desert portion," 1925; Figure 13. ACSC strip map of Route 66 between Needles and Danby, 1932; Figure 18. Map of a portion of southern California showing Route 66 between Topock and San Bernardino, 1937; Figure 19. Map of a portion of southern California in the early 1950s showing Route 66; Figure 35. Map showing various alignments of the National Old Trails Road and Route 66 between Needles and Essex; Figure 38. ACSC strip map of the National Old Trails Road between Needles and Danby, 1915; Figure 48. Thompson's map of the National Old Trails Road, 1918; Figure 50. ACSC strip map of Route 66 between Topock and Danby, 1928.

    g.  A National Park Service report titled "Historical Patterns of Road Networks in the Mojave National Preserve" discusses the development of road networks over time in the Preserve.  There is no specific reference to Goffs Road in the narrative; however, there are four reproductions of historic maps in the document showing the road system as of 1885, 1929, 1955 and 1994.  The

route does not appear on the 1885 map.  Each of the other three maps show routes closely aligned with the claimed Goffs Road.

### 4.    County Maintenance Records

The claimed segment of Goffs Road appears in some San Bernardino County Road Maintenance records, including entries for 1951, 1961, and 1971. The 1951 entry ("State Highway 66 (at Essex) E. to Arrowhead Jct.") indicates a road type of "RMS" with a width of 18 feet.  The 1961 entry ("SH 58 NE/SH 146") indicates a type 3 road 21 feet in width.  The 1971 entry ("SH 40 NE/SH46") indicates a type 3 road (width is not readable).  Road type 3 is defined by the County in the April 1973 Maintained Road System submittal as oil treated gravel and armor top, including those with seal coats. Taken together, these entries show that the claimed highway was maintained, constructed, and improved over a period of years when the public lands were unreserved and that by 1976 when RS 2477 was repealed the claimed right of way segment was a paved or "armor top" road.

### 5.    Planning Documents

a.    In November 1973, BLM released its "Interim Critical Management Program for Recreation Vehicle Use on the California Desert." Vehicle use on lands encompassing lands underlying Goffs Road was limited to designated roads and trails.  The map accompanying the plan identifies Goffs Road in the claimed location and thereby allowed motorized vehicle use on Goffs Road.

1

2
    b.  In May 1988, BLM released the East Mojave National Scenic Area Plan.  Goffs Road is identified as a county maintained road in that

3
plan.  The Plan explains that "[m]ost of the Scenic Area's roads and trails have been in existence for several decades and are the legacies of past mining,

4
agriculture, ranching, and homesteading activities."

5
    c.  The 2005 BLM publication "Life in the Past Lane. The

6
Route 66 Experience" presents historical and management contexts for the Route 66 corridor in California.  This publication includes information indicating that the

7
claimed section of Goffs Road was once part of the Route 66/National Old Trails

8
Road.  The publication provides the following historical information about Route

9
66/National Old Trails Road:

10
    i.  In the early 1920s, the road was largely

11
unimproved across the California desert and consisted of a sand-and-gravel surface from Topock to Victorville. Across most of the desert, the road was full of

12
ruts, making driving difficult and preventing speeds higher than 25 miles per hour.

13
    ii.  Although the State of California had adopted the

14
highway in 1919, maintenance responsibility was left to San Bernardino County

15
until 1923. At that time the state took over maintenance responsibilities for the

16
portion between Topock and Barstow.

17
    iii.  Even as late as the 1920s, road building was

18
largely accomplished by horse- and manpower. Horse-drawn plows and graders prepared the roadbed, and gravel was occasionally added to the top for

19
protection. It was not until the widespread use of gasoline-powered heavy

machinery such as tractors, graders, and dump trucks that highways began to contain reliable surfaces.

iv.     In 1923, the state spent a total of $1,870,947 on grading, paving, and bridge construction for the National Old Trails Road between Topock and Los Angeles. The most neglected portion of this segment was between Topock and Victorville, which had received only $100,000 of the total.  In 1925, for example, most of the road between Needles and Victorville remained unimproved dirt.  By 1927, the road consisted of an improved dirt surface from Topock to Needles.

v.     A long section of the original Route 66 (and the National Old Trails Road) was bypassed in 1931. The new road went almost due west through South Pass Station and Mountain Springs before linking up with the old road at Fenner, bypassing Klinefelter, Bannock, Goffs, and Piute.

**6.     Public Use**

a.     The claimed right of way over a segment of Goffs Road was used for travel through the area during the relevant time period (before 1934 and between 1968 and 1976).  Until 1931, the road was part of historic Route 66, a main artery of travel through the Mojave Desert.  The route connects the identifiable destinations of State Highway 95, Lanfair Road, the towns of Goffs and Fenner, Interstate 40, and the National Trails Highway (Old Route 66).

b.     The Parties agree that the width of the right-of-way as described in the Legal Description of Goffs Road herein, which is based on a survey of the existing road as provided in the Parties' Settlement Agreement, is a

sufficient, reasonable, and necessary width to accommodate the types of uses to which the right-of-way had traditionally been put as of October 21, 1976.

### 7.   Conclusion

The Parties agree that that the stipulated facts above taken together show that the claimed right of way over a segment of Goffs Road (excluding the Excluded Segments identified above) qualifies as a public highway right-of-way under R.S. 2477.  The Federal lands underlying the claimed section of Goffs Road were open to operation of R.S. 2477 before 1934 and from the date the lands were classified in 1967 until the repeal of R.S. 2477 in October 1976.  The claimed highway appears on historic maps, and is listed in various County maintenance records going back to at least 1951.  The road was mechanically constructed and maintained, and it existed as a paved or "armor top" road prior to the repeal of R.S. 2477.  The road was used by the public as a highway though the desert which connects identifiable destinations.

## VI.   Right-of-Way Easements in Which Title Is Quieted in the County

A.     Pursuant to 28 U.S.C. § 2409a, having considered the Parties' Joint Motion for Entry of Stipulated Judgment (including exhibits), and based on the above Findings of Fact and Conclusions of Law stipulated by the Parties, the Court hereby quiets title in the County of San Bernardino, as against the United States, to non-exclusive right-of-way easements subject to the terms and limitations contained herein (including attachments) in segments of the following roads:

1.   Nipton Road

2.   Goffs Road

B.      The right-of-way easements herein quieted are in the nature of a non-exclusive public highway right-of-way easement and not a fee.  The scope of use allowed for each right-of-way easement is limited to the type and intensity of use that was known and customary for that particular right-of-way easement at the time the Settlement Agreement between the Parties was executed and is subject to the additional limitations set forth herein.

C.      The location and physical dimensions (including beginning and ending points, alignment, and width) of the two right-of-way easements quieted in the County are set forth in, and are limited to, the "Legal Description" for each right-of-way easement set forth in the Right-of-way Descriptions attached to this Stipulated Judgment.  The two right-of-way easements include only those Structures and Facilities noted in the field notes to the Legal Descriptions for each of the right-of-way easements as set forth in the Right-of-way Descriptions attached to this Stipulated Judgment.

D.      The specific alignments identified for each of the right-of-way easements to which title is quieted in the County are the only valid alignments for each of those right-of-way easements and the County does not hold, and is barred from claiming, any interest in any prior or alternate alignment of those rights-of-way easements.

E.      Right-of-way Easement Limitations:  The right-of-way easements quieted in the County located over Goffs Road and Nipton Road are subject to the following limitations:

1.      Compliance with Applicable Laws:  Any use or maintenance of the right-of-way easements undertaken by or on behalf of the County will be undertaken in compliance with all Applicable Laws, as defined above.  The County shall undertake these compliance obligations at its sole cost and expense, except

as otherwise explicitly provided in the Settlement Agreement between the Parties.

2       Compliance with Environmental Requirements:  Any use or maintenance of the right-of-way easements undertaken by or on behalf of the County will be undertaken in compliance with all Environmental Requirements, as defined above, at the sole cost and expense of the County.

3.      Subject to existing rights:  The right-of-way easements are subject to all valid existing rights and the County must obtain permission from the owner of any such existing rights before undertaking any activity that affects any such existing rights.

4.      Non-exclusive rights:  The right-of-way easements are non-exclusive and the United States retains the common use of the right-of-way easements and may authorize compatible use of the right-of-way easements to third parties depending upon the circumstances presented to it and in recognition of existing rights.

5.      No utilities:  The County is not permitted to install, or to unilaterally authorize any other person to install, utilities, either above-ground or underground, within the right-of-way easement areas.  The United States, through BLM, as the holder of the servient estate, may agree to authorize the installation of utilities within the right-of-way easement areas in consultation with the County.

6.      Maintenance: The County is entitled to perform normal and customary maintenance of the right-of-way easement areas.  Such maintenance may include minor trimming, pruning and clearing of vegetative material within the right-of-way easement area.  The County shall perform all maintenance of the

right-of-way easement area in a usual, customary and proficient manner in order to prevent any unnecessary or undue degradation of public land resources.

7.     No unauthorized improvements:  The County is not permitted to make improvements in the right-of-way easement areas without prior written authorization of the BLM or written notice from BLM of its determination that the proposed improvement falls within the scope of the right-of-way.

8.     No removal of mineral, mineral material, or vegetative material:  The County is not permitted to remove, or to authorize any other person to remove, any mineral, mineral material, or vegetative material (other than vegetative material that needs to be removed for minor trimming, pruning and clearing of vegetative material in the course of normal maintenance of the right-of-way easement area) from the right-of-way easement areas or adjacent public lands without prior written authorization of the BLM.

9.     Workmanlike maintenance:  The County shall perform all maintenance in the right-of-way easement areas in a good and workmanlike manner so as to ensure protection of the environment, public land resources, and the health and safety of the public.

10.     United States' right to regulate:The United States retains the right and authority to regulate use of the right-of-way easements pursuant to applicable constitutional, statutory, and regulatory authority, in order to, *inter alia*, prevent unnecessary or undue degradation of public land resources, to protect the environment and public land resources, and to protect the health and safety of the public.

G.     Indemnification.  The right-of-way easements quieted in the County are subject to the following indemnification provisions:

1        1.      The County will indemnify, defend, save and hold harmless the

2 United States from and against any and all fines, claims, damages, losses,

3 judgments, expenses and other forms of liability arising as a result of the

4 presence, suspected presence, release or suspected release of any Hazardous

5 Materials, as defined above, caused by the County, or its officers, employees, or

6 agents, in connection with the County's use or maintenance of the right-of-way

easement area.

       2.      The County will indemnify, defend, save and hold harmless the

7 United States from and against any and all fines, claims, damages, losses,

8 judgments, expenses and other forms of liability arising out of, or from, any act or

9 omission of the County, its officers, employees, or agents, and arising in

10 connection with the County's use or maintenance of the right-of-way easement

area.

11        3.      The County will compensate the United States for any damage

12 to the lands or other property of the United States caused by the County, its

13 officers, employees or agents, and arising in connection with the County's use or

14 maintenance of the right-of-way easement area.  The United States shall

15 determine the amount of such compensation in accordance with Applicable Law.

16 If the County disagrees, the County and the United States shall attempt to resolve

17 the issue within 60 days.  The County and the United States may jointly agree to

18 extend this time period.  At the end of the 60 days or any mutually agreed upon

19 time period, but not before, the County or the United States may seek judicial

relief.

      H.      Waiver.  No waiver, whether express or implied, of any breach of the

terms, limitations, or indemnification provisions with respect to the right-of-way

easements as described herein, shall be construed as a continuing waiver, or a

waiver of or consent to, any subsequent or prior breach of the same or any other provision of this Judgment.  No waiver of any breach shall affect or alter the terms governing the County's use of the right-of-way easements, but each and every provision of this Judgment shall continue in full force and effect with respect to any other than existing or subsequent breach.

I.      Right-of-way easements not assignable; licenses or permits.  The right-of-way easements to which title is quieted in the County by this Judgment cannot be assigned or conveyed, sold, granted, leased or any interest transferred in any other way to any other entity.  The County may not grant any licenses or permits in the right-of-way easement areas that extend beyond the customary and routine uses or scope of the right-of-way easements.  (For example, the County may continue to process and issue routine oversized load permits.)   Any licenses or permits for use beyond customary and routine use or any use that is outside the scope of the right-of-way easement must be otherwise authorized by BLM in consultation with the County.

J.      Extinguishment of right-of-way easements.  If the need for any of the right-of-way easements to which title is quieted in the County by this Judgment ceases to exist, the County shall notify the Secretary of the Interior of that fact and the right-of-way easement shall immediately terminate and be extinguished, thereby freeing the underlying fee of the right-of-way easement.

K.      Nothing in this Stipulated Judgment impairs or restricts the United States' eminent domain authority.

**VII.   Dismissal of County's Claims to Halloran Springs Road and Halloran Summit Road**

_____

The County agrees that Halloran Springs Road and Halloran Summit Road do not constitute rights-of-way under R.S. 2477 and stipulates to the dismissal of its claims to these roads with prejudice.  The Court therefore enters judgment dismissing with prejudice the County's claims to Halloran Springs Road and Halloran Summit Road.

**VIII.   Resolution of County's Claims to Rights-of-Ways in Mojave National Preserve**

A.      The United States recognizes that the County held valid legal interests in non-exclusive, public highway right-of-way easements over the following-identified roads within Mojave National Preserve: Black Canyon Road, Cedar Canyon Road, Cima Road, Essex Road, Ivanpah Road, Kelbaker Road, Lanfair Road, and Morning Star Mine Road, except as to those segments of the roads that are specifically identified in Section 1.G of the Parties' Settlement Agreement. The right, title and interest recognized in the aforementioned roads derives from state or federal law, and the origin of the right, title and interest depends on whether the County's title was perfected at a time when the lands underlying the roads were owned by the federal government.  For those segments of the roads where the County's title was perfected at a time when the underlying lands were owned by the federal government, the United States recognizes that the County's right, title and interest derives from Revised Statute 2477 ("R.S. 2477"), Act of July 26, 1866, Ch. 262, § 8, 14 Stat. 251, 253, codified in 1873 as section 2477 of the Revised Statutes, recodified in 1938 as 43 U.S.C. § 932 (1970, repealed 1976).  For those segments of the road where the County's right, title and interest was perfected at a time when the underlying lands were not owned by the federal government, the County's title may derive from state law.  In either case, the

nature of the County's interest in the roads was that of a non-exclusive, public highway right-of-way easement.

B.      The Parties acknowledge and the Court recognizes that the County has conveyed to the United States pursuant to the deeds attached to this Stipulated Judgment all the right, title and interest the County held in the following listed roads within Mojave National Preserve: Black Canyon Road, Cedar Canyon Road, Cima Road, Essex Road, Ivanpah Road, Kelbaker Road, Lanfair Road, Morning Star Mine Road, Kelso-Cima Road and New York Mountain Road.  The County's conveyance to the United States includes, but is not limited to, the public highway right-of-way easements the County held in segments of the above-listed roads located in Mojave National Preserve that cross land not owned by the United States.  The County has represented to the United States that it holds public highway rights-of-way over these private segments and has agreed to cooperate with the United States in defending any challenge to these rights-of-way or its conveyance of these rights-of-way to the United States.  The purpose of the County's conveyance to the United States is to ensure that all right, title, and interest held by the County in these roads is conveyed to the United States so that the National Park Service is able to maintain and administer the roads in accordance with applicable laws and policies governing the National Parks, including the Mojave National Preserve General Management Plan.  The Parties further acknowledge and the Court recognizes that the County has abandoned any and all prior alignments of the above-listed roads and has relinquished any and all claims to any and all interest in other potential rights-of-way in Mojave National Preserve.

C.      The Parties acknowledge and the Court recognizes that the County's conveyance of its interests in the above-listed roads to the United States, along

with its abandonment of prior alignments and relinquishment of all other claims to potential rights-of-way in Mojave Preserve, are integral parts of the Settlement Agreement reached between the Parties and are prerequisites to the Parties' stipulation to this Judgment resolving the County's claims in this lawsuit. Therefore, should all or any part of the County's conveyance, abandonment, or relinquishment be rendered ineffective or otherwise invalid, this Stipulated Judgment shall be voidable in whole or in part upon the request of the United States. In lieu of voiding the Stipulated Judgment in whole or in part, the United States, at its discretion, may seek an order from the Court directing the County to cure any procedural or other defects in the County's conveyance, abandonment, or relinquishment.

D.     The Parties agree and stipulate to the dismissal of the County's claims regarding Black Canyon Road, Cedar Canyon Road, Cima Road, Essex Road, Ivanpah Road, Kelbaker Road, Lanfair Road, Morning Star Mine Road, Kelso-Cima Road, and New York Mountain Road with prejudice. The Court therefore enters judgment dismissing with prejudice the County's claims to Black Canyon Road, Cedar Canyon Road, Cima Road, Essex Road, Ivanpah Road, Kelbaker Road, Lanfair Road, Morning Star Mine Road, Kelso-Cima Road and New York Mountain Road.

## IX.     Other Provisions

A.     Interpretation.  Unless otherwise specified, the following rules of construction and interpretation apply to this Judgment:

1.     Captions are for convenience and reference only and in no way define or limit the construction of the terms and conditions set forth herein.

2.     Use of the term "including" will be interpreted to mean "including but not limited to."

3. All attachments to this Judgment and Order are an integral part of this Judgment and are incorporated herein by reference.

B. Reservations. This Judgment was entered based on stipulation of the Parties for the purpose of compromising and settling this litigation and nothing in this Judgment shall be construed or offered in evidence in any proceeding as an admission by any Party as to any fact, claim or defense in this action, or as precedent as to the merits of any claim or defense.

C. Parties to bear own costs and fees. Each Party shall bear its own costs and fees (including attorney's fees).

D. Nothing in this Stipulation shall be interpreted as, or shall constitute, a commitment or requirement that the United States obligate or pay funds, or take any other action, in contravention of the Anti-Deficiency Act, 31 U.S.C. 1341, or any other applicable appropriations law.

E. If for any reason the Court should decline to approve and enter this Stipulated Judgment in the form presented, the Parties' Settlement Agreement shall be  void, unless within 30 days or some other period agreed upon by the Parties in writing, each of the Parties agrees in writing that the Settlement Agreement will remain in force. If the Settlement Agreement is voided, the terms of the Settlement Agreement may not be used as evidence in any litigation between the Parties.

F. Each undersigned Party representative certifies that he or she is fully authorized to enter into the terms and conditions of this Stipulated Judgment and to execute and legally bind such Party to this document.

G. This Stipulated Judgment and its attachments (including the Settlement Agreement) constitute the final, complete, and exclusive agreement

and understanding among the Parties with respect to the settlement embodied in the Stipulated Judgment.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Stipulated Judgment.

H.     Judgment fully resolves all claims.  Upon approval and entry of this Stipulated Judgment by the Court, this Stipulated Judgment shall constitute a final judgment between and among the Parties that fully and completely resolves all the County's claims in this action.  The Court finds that there is no just reason for delay and therefore enters this Judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

The Parties hereby stipulate to the form and content of this Judgment.

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources
Division

Dated _____                          _____

JOSEPH H. KIM
Trial Attorney
Natural Resources Section
Environment and Natural Resources
Division
United States Department of Justice
P.O. Box 7611
Washington D.C. 20044-7611
Telephone: (202) 305-0207
Email: joseph.kim@usdoj.gov

1

2

ATTORNEYS FOR FEDERAL DEFENDANTS,
UNITED STATES OF AMERICA on behalf of
DEPARTMENT OF THE INTERIOR

3

4

JEAN-RENE BASLE
County Counsel

5

Dated _____                    _____

6

7

8

9

10

MITCHELL L. NORTON
Deputy County Counsel
County of San Bernardino
385 N. Arrowhead Ave., 4th Floor
San Bernardino, California 92415-0140
Telephone: 909 387-5444
Facsimile: 909 387-4381
Email: mnorton@cc.sbcounty.gov

11

12

ATTORNEYS FOR PLAINTIFF, COUNTY OF
SAN BERNARDINO

13

Dated _____                    _____

14

15

16

17

18

LISA T. BELENKY
Senior Attorney
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, California 94104
Telephone: 415 436-9682, ext. 307
Facsimile: 415 436-9683
Email: lbelenky@biologicaldiversity.org

19

ATTORNEYS FOR DEFENDANT-
INTERVENORS, NATIONAL PARKS

1

2

CONSERVATION ASSOCIATION, CENTER FOR
BIOLOGICAL DIVERSITY, and SIERRA CLUB

3

4

IT IS SO ORDERED.

5

DATED  this _13th__ day of March, 2014.

6

7

_____

8

Hon. Virginia A. Phillips
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

**[Example for Right-of-way Easement Description for Nipton and Geoffs Roads, title of which is being quieted in the County]**

ATTACHMENT 1

TO STIPULATED JUDGMENT

Right-of-way Easement Description

1. Name of road: _____

2. Owner of right-of-way easement:

   San Bernardino County, California

   c/o _____

   _____

   _____

3. General location: California Desert Conservation Area, within San Bernardino County, California

4. Nature and purpose the of right-of-way easement:

   Non-exclusive public highway right-of-way easement for use of identified road for public travel by persons and vehicles subject to terms and limitations contained in the Stipulated Judgment.

5. Legal Description of right-of-way easement:

   a. Beginning point: _____

b.   Ending point:   _____

c.   Centerline survey:  The centerline of the right-of-way is identified by the GPS survey data attached hereto as Attachment ___.  Cadastrel (description and data points).

d.   Excluded segments:

e.   Width: ___ feet to either side of the centerline for accommodation of ___ travel lanes of ___ feet in width each, and shoulders of ___ feet in width each ("right-of-way easement area" is the total ___ foot wide right-of-way along the entire length of the centerline).

f.   Road surface:  road surface consists of _____

6.   Description of existing structures and facilities:  existing structures and facilities within right-of-way area are noted in the field notes to survey of right-of-way.